FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 2 7 2021

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**RIO VERDE HOLDINGS LTD**                                   **PLAINTIFF**

VS.                        CASE NO. 4:21-cv-764-BRW

**JAMES DAVID BURTON AND**
**JEFFREY BURTON**                                           **DEFENDANTS**

## COMPLAINT

Plaintiff Rio Verde Holdings LTD, for its complaint against James David Burton and Jeffrey Burton, states:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Rio Verde Holdings LTD ("Plaintiff") is a private limited company validly existing pursuant to the laws of the United Kingdom.

2. All of the interests of Plaintiff are owned by RHI Energy, LLC, a Texas limited liability company the sole member of which is an individual citizen and resident of Texas. Plaintiff's principal place of business is in Texas.

3. Upon information and belief, James David Burton is an individual residing in Jackson County, Arkansas.

4. Upon information and belief, Jefferey Burton is an individual residing in Pulaski County, Arkansas.

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

This case assigned to District Judge _Wilson_
and to Magistrate Judge _Kearney_

2387662-v1

6. This is a cause of action for breach of contract, conversion, and replevin of certain personal property owned by Plaintiff.

7. Venue in this action is proper pursuant to 28 U.S.C. § 1391 because (i) Defendants reside in this judicial district, (ii) Defendants are subject to personal jurisdiction in this judicial district, and (iii) a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

8. Plaintiff is in the business of mining cryptocurrencies such as bitcoin and uses machines called miners to mine the cryptocurrencies.

9. One of the largest costs in mining cryptocurrencies is the cost of electricity or power to the machines.

10. It is a common practice in the cryptocurrency industry for companies to offer a host facility or colocation mining facility to businesses that mine cryptocurrencies.

11. Colocation facilities provide space, power, cooling, networking service, and physical security for the customer's mining machines, with a minimum of cost and complexity.

12. This type of service arrangement is generally known in the industry as a Colocation Facility Services Agreement.

13. On or about June 15, 2021, Plaintiff received an email advertisement regarding colocation options in Arkansas that would provide colocation services at 8.5 cents "all in", which means the total fee associated with providing space, power,

and bandwidth to run mining machines. See Email advertisement attached hereto and incorporated herein as Exhibit 1.

14. Plaintiff followed up on the advertisement and contacted Defendants about providing such services from their facility in Newport, Arkansas.

15. Defendants informed Plaintiff that there were both land and power opportunities in Newport, and that Defendants could offer the colocation services.

16. On or about July 19, 2021, Plaintiff's agent, Warren Rogers, traveled to Newport, Arkansas and toured the facilities where the services would be provided.

17. At the meeting in Newport, Defendants represented to Plaintiff that they were ready to receive the miners for 8.5 cents per kilowatt hour, "all-in."

18. The arrangement was for Plaintiff to be a customer of Defendants.

19. Shortly after the trip to Newport, Arkansas and based on the representations made by Defendants, Plaintiff shipped a total quantity of 52 miners with a total fair market value of approximately $500,000 to the site in Newport located, upon information and belief, at 2119 Malcolm Avenue, Newport, AR 72112 (the "Facility").

20. Upon information and belief, Defendants lease the Facility from an individual named John Connor.

21. On or about July 23, 2021, separate defendant James David Burton picked up 44 of the miners, at his own expense, from Calvert City, Kentucky.

22. The other miners arrived at the Facility in Newport, Arkansas, in August 2021.

23. The 52 miners located at the Facility are owned by Plaintiff, and include the following:

- (8) Antminer S19 Pro 100T with a fair market value of approximately $88,000;

- (9) Goldshell CK5 12T with a fair market value of approximately $90,000;

- (5) Antminer S19 Pro 110T with a fair market value of approximately $60,000; and

- (30) Canaan Avalon 1166 74T with a fair market value of approximately $244,500.

(collectively, the "Miners").

24. Toward the end of July, 2021, Defendants, upon information and belief, realized that they did not have the proper infrastructure to host the Miners. As a result, Defendants went to work refitting the Facility to service the Miners owned by Plaintiff, but encountered challenges.

25. Defendants eventually determined that his Facility would not be able to service the Miners successfully at the rates he had agreed to.

26. It also became clear that they did not know how to set up the Facility and get the Miners online.

27. Through text messages and phone calls, Defendants expressed that they needed help to set up the Miners safely, without damaging them.

2387662-v1

28. As a result, Plaintiff sent an individual from Medina Mining to assist them, at Plaintiff's expense in the amount of $1,845.70. Plaintiff incurred this fee because moving the machines out would increase the risk of damage to the fragile Miners that were already at the Facility.

29. Despite the assistance from Medina Mining, the Facility could not be made to properly support the Miners so that they would function in the manner required.

30. Defendants initially demanded that Plaintiff pick up the Miners from the Facility.

31. On August 10, 2021, Plaintiff notified Defendants that Plaintiff was making arrangements to collect the Miners from the Facility.

32. At that point, Defendants stopped communicating directly with Plaintiff and started making demands through counsel. On August 12, 2021, Defendants expressed that they were entitled to keep the Miners until all allegedly unpaid amounts—including alleged lost profits—were paid, including a demand for $2,000 per day for rent.

33. Defendants also falsely claimed that Plaintiff had agreed to repair and renovate the Facility.

34. To date, Plaintiff has lost an approximate total of $45,655 in earnings since engaging with Defendants. The daily amount of losses totals approximately $45,655 and damages to Plaintiff continue to accrue at a rate of approximately $1,985 per day.

35. Upon information and belief, Defendants have been operating Plaintiff's Miners for profit for days or weeks and generating revenue of approximately $2,000 or more per day that is going into Defendants' digital wallet and not Plaintiff's.

36. The fair market value of the Miners wrongfully detained by Defendants is in excess of $500,000.

## COUNT I – BREACH OF CONTRACT

37. Plaintiff incorporates by reference the allegations previously set forth above.

38. Although Plaintiff and Defendants never executed a written formal agreement, Defendants offered a service to Plaintiff for colocation services in exchange for a set fee as advertised.

39. Plaintiff accepted that offer and performed its obligations by delivering the Miners to the Facility for Defendants to operate them.

40. Defendants breached this agreement to provide services and then refused to allow Plaintiff to access or regain possession of the Miners.

41. As a result of Defendants' breach, Plaintiff is entitled to a joint and several *in personam* judgment in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

42. Defendants are also entitled to recover pre-judgment and post-judgment interest along with attorneys' fees and costs pursuant to Ark. Code Ann. § 16-22-308.

## COUNT II - REPLEVIN

43. Plaintiff incorporates by reference the allegations previously set forth above.

44. Defendants do not claim any ownership interest in the Miners.

45. However, Defendants are in possession of the Miners and refuse to turn them over to Plaintiff without payment of fees and alleged damages that are not owed to them.

46. Defendants wrongfully possess the Miners. Their right of possession having terminated upon the termination of the services agreement between Plaintiff and Defendants. Plaintiff has not consented to Defendants continued possession of the Miners and has demanded—without success—that Defendants allow Plaintiff to retrieve them.

47. Plaintiff is entitled to immediate possession of the Miners.

48. Plaintiff requests that Defendants be ordered to immediately allow access to the Miners so Plaintiff may obtain possession of them.

49. Because Defendants have wrongfully detained the Miners, Plaintiff is entitled to a joint and several *in personam* judgment for damages resulting from the wrongful detention of the Miners including compensatory damages and punitive damages.

2387662-v1

50. Plaintiff is also entitled to amount of damages for any harm that Defendants have caused to the Miners, which is unknown at this time.

### COUNT III – CONVERSION

51. Plaintiff incorporates by reference the allegations previously set forth above.

52. Plaintiff owns the Miners.

53. Defendant intentionally took and are now exercising dominion and control over the Miners in violation of Plaintiff's right as the owner.

54. Despite demand, Defendants are withholding possession of the Miners and have refused to allow Plaintiff to take possession of them.

55. Defendants have no justified reason to maintain possession of the Miners.

56. Defendants' possession is wrongful.

57. Plaintiff is entitled to a joint and several *in personam* judgment against Defendants for conversion of the Miners in an amount in excess of $500,000.

58. Plaintiff is also entitled to punitive damages against Defendants for willful and malicious conversion.

59. Plaintiff reserves the right to amend this complaint.

WHEREFORE, plaintiff Rio Verde Holdings LTD requests that it be awarded (i) a joint and several *in personam* judgment as set forth above; (ii) an order for immediate possession of the Miners; and (iii) for all other relief to which it is entitled.

2387662-v1

                WRIGHT, LINDSEY & JENNINGS LLP
                200 West Capitol Avenue, Suite 2300
                Little Rock, Arkansas 72201-3699
                (501) 371-0808
                FAX: (501) 376-9442
                E-MAIL: mbarnes@wlj.com;
                eberger@wlj.com; jfair@wlj.com

By   */s/ Michael D. Barnes*
                Michael D. Barnes (88071)
                Eric Berger (2004210)
                Jacob P. Fair (2015167)

                *Attorneys for Rio Verde Holdings LTD*

# Gmail

Warren Rogers <warren.david.rogers@gmail.com>

## Mid July Mining Updates
1 message

**Bob Spiegel** <bob@quotecolo.com>　　　　　　　　　　　　　　　　　　　　　　　Thu, Jul 15, 2021 at 8:13 AM
To: "warren.david.rogers@gmail.com" <warren.david.rogers@gmail.com>

Warren,

With the past bull run and recent China mining restrictions, finding immediate miner hosting colocation space has been tough. Most of our traditional miner host suppliers are out 90+ days for 1MW+ capacity. Pricing is in the 5-7 cent range.

At the moment we have the following immediate colocation options.

1) NYS Host 1.5MW
4 cents all in (pass thru)
estimated 40% profit share
10 MOQ – next generation miners only

2) Arkansas Client 1MW (not a host company)
8.5 cents all in
25 MOQ - next generation miners only

Other quick updates/notes:

Miner prices have fallen recently but are back on the rise with mining difficulty down 28%. New Bitmain S19 miners have ranged from $63-73/Th plus shipping. S9s are still selling and we just listed a batch from China at $199/unit plus shipping. MOQ 200.

https://docs.google.com/spreadsheets/d/1vx1YGiwROz9sa-X-IzHTrzVASk8ZOPIaqaiR6NN3gYo/edit?usp=sharing

Containers suppliers are very busy and quoting 6-15 weeks for new mining containers. The 12ft mini pod option that houses 70 next gen miners is 14+ weeks out for delivery!

Our fully managed solution provider has been successfully delivering June and July Terahash contracts and has added 42,000 Terahash more for October and November delivery. Pricing from $39.95/Th and up. No hosting deposits, no maintenance expenses, no shipping expenses and 100% uptime guaranteed!

We are still looking for reliable ETH and alt coin mining solutions (managed and/or hosted) but have yet to come up with any solutions.

Our buy/host partners are sold out of hosting until late August/September and they are taking pre orders now. MOQ 5.

In my humble opinion, hosting colocation space for less than 300 miners will not be available until Q1 2022.

Please let me know if we can assist on anything.

Best regards,

Bob Spiegel
bob@quotecolo.com

To be removed from our mail list just reply with "remove" in the subject line.

